**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David Wayne MARCHANT, Defendant–Appellant.**

No. 94–2124.

United States Court of Appeals, Tenth Circuit.

May 16, 1995.

---

Louis E. Valencia, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., with him on the brief), Albuquerque, NM, for plaintiff-appellee.

Roger A. Finzel, Asst. Federal Public Defender, Albuquerque, NM, for defendant-appellant.

Before MOORE, ALDISERT,* and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant David Wayne Marchant appeals his convictions for making a false statement in the acquisition of a firearm, 18 U.S.C. § 922(a)(6), and felon in possession of a firearm, 18 U.S.C. § 922(g)(1). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

The record before us reveals the following. On December 31, 1992 Defendant entered the J & R Pawn Shop in Albuquerque, New Mexico and pawned a rifle. On February 1, 1993 Defendant returned to the pawn shop to redeem the rifle. In order to legally receive the rifle under federal law, Defendant com-

---

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

pleted an Alcohol, Tobacco, and Firearms ("ATF") Form 4473.[1]

ATF Form 4473, titled "Firearms Transaction Record," is one page, printed front and back, and consists of a "Section A" and a "Section B," which the transferee and transferor/dealer execute respectively. A firearms transferee must complete Section A and disclose various information when obtaining a firearm from a federally licensed firearms dealer such as J & R Pawn Shop. The back of ATF Form 4473 explains to the transferee that "[t]he purpose of the information is to determine the eligibility of the buyer (transferee) to receive firearms under Federal Law." Section A, part 8 informs the transferee that "[a]n untruthful answer may subject you to criminal prosecution." Part 8(b) requires the transferee to disclose whether he or she had been convicted of a crime punishable by imprisonment for a term exceeding one year. On the back of the form, under the bold print heading, "Important Notices to Transferor (Seller) and Transferee (Buyer)," ATF Form 4473 states, "[t]he transferee (buyer) of a firearm should be familiar with the provisions of law. Generally, 18 U.S.C. 921–929 prohibit the ... receipt, or possession ... of a firearm by one who ... has been convicted of a crime punishable by imprisonment for a term exceeding one year...."

The transferee must present identification, "certify that the answers to the above are true and correct," and sign the ATF Form 4473 directly beneath a statement that "I also understand that the making of any false oral or written statement ... with respect to this transaction is a crime punishable as a felony." The back of ATF Form 4473 alerts the transferee that the "information is subject to inspection by ATF officers."

Defendant produced his New Mexico Driver's License for identification to the J & R

Pawn Shop employee, and indicated on the ATF Form 4473, Section A, part 8(b) that he had not been convicted of a crime punishable by imprisonment for a term exceeding one year. By his signature, Defendant certified that the answers were true and correct. Defendant redeemed the rifle and left J & R Pawn Shop.

The next day, February 2, 1993, New Mexico Probation–Parole Officers George Drake and Maurice Gonzales went to J & R Pawn Shop to investigate a report that a probationer, not Defendant, had purchased a firearm there. Probation–Parole Officer Drake obtained permission from Jack Parks, owner of J & R Pawn Shop, to review the ATF Form 4473s that Parks kept on file as required by federal law. In their review of the records, Probation–Parole Officers Drake and Gonzales discovered the ATF Form 4473 Defendant had filled out when he redeemed the rifle the day before. Probation–Parole Officer Drake noticed that Defendant had indicated he had not been convicted of a crime punishable by imprisonment for a term exceeding one year. Probation–Parole Officer Drake, however, knew Defendant was a convicted felon, and had been convicted of a crime punishable by a term of imprisonment in excess of one year.

Probation–Parole Officer Drake contacted Bureau of Alcohol, Tobacco, and Firearms ("BATF") Special Agent Frank Ortiz and informed him that Defendant, a convicted felon, had obtained a firearm at the J & R Pawn Shop. On February 2, 1993, Special Agent Ortiz retrieved from the J & R Pawn Shop the ATF Form 4473 Defendant had completed and obtained a search warrant for Defendant's residence.

ATF agents executed the search warrant at Defendant's residence on February 5, 1993. During the search, ATF agents found the rifle described in the ATF Form 4473

---

1. Federal regulations provide that federally licensed firearms dealers, including pawnbrokers, "shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person ... unless the licensee records the transaction on a firearms transaction record, Form 4473." 27 C.F.R. § 178.124(a). Although ATF Form 4473 refers to "Transferee (Buyer)" and "Transferor (Seller)", the redemption of a firearm from a pawnbroker is a transaction that must be recorded on an ATF Form 4473. *See Huddleston v. United States*, 415 U.S. 814, 828–29, 94 S.Ct. 1262, 1270–71, 39 L.Ed.2d 782 (1974) (pawnbroker must record the redemption of a firearm on an ATF Form 4473); *United States v. Kilburn*, 596 F.2d 928, 933 n. 1 (10th Cir.1978) (same), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979).

and ammunition of matching caliber. After the ATF agents advised him of his constitutional rights and he signed a waiver, Defendant told Special Agent Ortiz that the rifle and ammunition were his, acknowledged that he had pawned and redeemed the rifle at J & R Pawn Shop, and stated that he was keeping it for an unidentified friend.

On April 7, 1993, a federal grand jury charged Defendant in a two-count indictment with making a false statement in the acquisition of a firearm, 18 U.S.C. § 922(a)(6), and felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Defendant filed a motion to suppress, contending that pursuant to the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921–30, as amended by the Firearms Owners' Protection Act of 1986 ("FOPA"), Pub.L. No. 99–308, 100 Stat. 449 (1986), the initial examination of the ATF Form 4473 at the J & R Pawn Shop by Probation–Parole Officers Drake and Gonzales constituted an unreasonable search or seizure in violation of the Fourth Amendment. As a result of the constitutional violation, Defendant argued that all derivative evidence, including the rifle and ammunition found during the search of his residence and his inculpatory statement to Special Agent Ortiz, must be suppressed under the "fruit of the poisonous tree" doctrine. The district court denied Defendant's motion to suppress after a hearing, finding that under the GCA and FOPA Defendant had no reasonable expectation of privacy in the ATF Form 4473, and therefore lacked "standing to object to the disclosure of the information ... contained in the" ATF Form 4473. Further, the district court ruled that Jack Parks, owner of J & R Pawn Shop, legally had the "right to have and to convey to anyone whom he wishes" the information on the ATF Form 4473, and that he consensually allowed Probation–Parole Officers Drake and Gonzales to review the documents. At trial, the jury convicted Defendant of both counts, and the district court sentenced Defendant to thirty-seven months

imprisonment and three years supervised release. This appeal followed.

On appeal, Defendant argues the district court erred in denying his motion to suppress. Specifically, Defendant contends that the district court erred in concluding that under the GCA and FOPA he did not have a reasonable expectation of privacy in ATF Form 4473 and thereby lacked Fourth Amendment standing to contest the initial inspection of the form by Probation–Parole Officers Drake and Gonzales.[2]

■ On appeal from the denial of a motion to suppress, we view the evidence in the light most favorable to the district court's ruling, and will uphold the district court's factual findings unless they are clearly erroneous. *United States v. Flores,* 48 F.3d 467, 468 (10th Cir.1995). However, we examine the question of standing under the Fourth Amendment de novo. *United States v. Betancur,* 24 F.3d 73, 76 (10th Cir.1994).

■ In order to challenge the lawfulness of a search and seizure under the Fourth Amendment, a defendant must first establish his or her standing to do so. *See United States v. Deninno,* 29 F.3d 572, 576 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). The term standing in this context "refer[s] to the determination of whether a defendant's Fourth Amendment rights have been violated, and not in its traditional sense as a constitutionally-or prudentially-based jurisdictional bar." *United States v. Eylicio-Montoya,* 18 F.3d 845, 850 n. 3 (10th Cir. 1994). "The issue of 'standing' to challenge a search is not a concept which is separate and distinct from the merits of the underlying Fourth Amendment claim," *Betancur,* 24 F.3d at 76, but one which is intertwined "with the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." *Rakas v. Illinois,* 439

---

**2.** Defendant also argues on appeal that the district court erred in concluding that Jack Parks, owner of J & R Pawn Shop, had the capacity to consent to the warrantless inspection of ATF Form 4473 by Probation–Parole Officers Drake and Gonzales. Because we conclude that Defen-

dant lacks standing to challenge the examination of the ATF Form 4473 at J & R Pawn Shop, we need not determine whether Jack Parks had the capacity to consent to the warrantless inspection of the ATF Form 4473.

U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *see also United States v. Taketa,* 923 F.2d 665, 669 (9th Cir.1991) ("[T]o say that a party lacks fourth amendment standing is to say that *his* reasonable expectation of privacy has not been infringed."). "Consequently, 'a threshold issue in deciding a motion to suppress evidence is whether the search at issue violated the rights of the particular defendant who seeks to exclude the evidence.'" *United States v. Soto,* 988 F.2d 1548, 1552 (10th Cir.1993) (quoting *United States v. Rascon,* 922 F.2d 584, 586 (10th Cir.1990), *cert. denied,* 500 U.S. 926, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991)). "Important considerations include ownership, lawful possession, or lawful control of the place searched." *United States v. Abreu,* 935 F.2d 1130, 1133 (10th Cir.), *cert. denied,* 502 U.S. 897, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991). "Whether evidence sought to be introduced was obtained in violation of someone else's Fourth Amendment rights is immaterial," because "Fourth Amendment rights are personal and may not be asserted vicariously." *Eylicio–Montoya,* 18 F.3d at 850. It is the defendant's burden to establish "that his own Fourth Amendment rights were violated by the challenged search and seizure." *Abreu,* 935 F.2d at 1132.

To determine whether a search violated the Fourth Amendment rights of the defendant, we inquire whether the defendant has established: (1) a subjective expectation of privacy in the property searched, and (2) that society would recognize that expectation of privacy as objectively reasonable. *Betancur,* 24 F.3d at 76; *see also Rakas,* 439 U.S. at 143 & n. 12, 99 S.Ct. at 430 & n. 12; *Abreu,* 935 F.2d at 1132. "The 'ultimate question' is 'whether one's claim to privacy from governmental intrusion is reasonable in light of all the surrounding circumstances.'" *United States v. Leary,* 846 F.2d 592, 595 (10th Cir.1988) (quoting *Rakas,* 439 U.S. at 142, 99 S.Ct. at 430 (Powell, J., concurring)).

Congress enacted the GCA because "it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262,

1268, 39 L.Ed.2d 782 (1974). "The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Id.* (quoting S.Rep. No. 1501, 90th Cong., 2d Sess. 22 (1968)). The GCA restricted public access to firearms, and channeled commerce in firearms "through federally licensed ... dealers in an attempt to halt mail-order and interstate consumer traffic in these weapons." *Id.* at 824, 94 S.Ct. at 1269.

Section 922(d) of the GCA prohibited federally licensed firearms dealers from selling firearms to convicted felons, fugitives from justice, drug addicts, and mentally disordered persons. *See* Pub.L. No. 90–618, § 922(d), 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C. § 922(d)). Sections 922(g) and (h) of the GCA prohibited the same four classes of persons from shipping, transporting, or receiving firearms. *See* Pub.L. No. 90–618, § 922(g)—(h), 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C. § 922(g)).

Pursuant to § 923(g) of the GCA, the Treasury Department's BATF developed ATF Form 4473 and required federally licensed firearms dealers to maintain records of the sale or disposition of firearms. *See* Pub.L. No. 90–618, § 923(g), 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C. § 923(g)(1)(A)). The GCA mandated that the dealer maintain firearms records on file and "make such records available for inspection at all reasonable times." *Id.* Further, the GCA authorized the BATF to enter the premises of a firearms dealer during business hours to conduct a warrantless inspection of firearms records, including by definition ATF Form 4473s. *Id.* If a state agency so requested, the GCA allowed the BATF to "make available to such State or any political subdivision thereof, any information ... with respect to the identification of persons ... who have purchased or received firearms or ammunition." *Id.* Thus, information drawn by ATF agents from the ATF Form 4473s kept by the licensed firearms dealers was a mechanism by which Congress kept firearms out of the hands of convicted felons and

others prohibited from possessing them. *See Huddleston,* 415 U.S. at 825, 94 S.Ct. at 1269.

Congress enacted FOPA in 1986 to amend and clarify various aspects of the GCA, and "to direct the enforcement efforts of the BATF away from what Congress viewed as unintentional and technical violations of the Gun Control Act toward what Congress perceived as more 'serious, intentional criminals.'" *United States v. Cassidy,* 899 F.2d 543, 546–47 (6th Cir.1990) (quoting S.Rep. No. 476, 97th Cong., 2d Sess. 14–17 (1982)). As relevant to this appeal, FOPA limited the BATF's authority to inspect records in the possession of firearms dealers, *see* David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective,* 17 Cumb.L.Rev. 585, 654–55 (1987), while increasing the BATF's "ability to keep firearms out of the hands of criminals." H.R.Rep. No. 495, 99th Cong., 2d Sess. 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1329. In the preface to FOPA, however, Congress reaffirmed that the GCA was "not intended to discourage or eliminate the private ownership or use of firearms by *law-abiding citizens for lawful purposes.*" Pub.L. No. 99–308, § 1(b)(2), 100 Stat. 449 (1986) (emphasis added).

FOPA replaced the GCA's broad authorization to the BATF to make warrantless inspections of ATF Form 4473s "at all reasonable times," with a more defined range of inspection powers. Section 103 of FOPA required a warrant issued by a magistrate and a showing of reasonable cause to believe evidence of a violation may be found before the BATF could inspect firearms records in the possession of a firearms dealer. Pub.L. No. 99–308, § 103(g)(1)(A), 100 Stat. 449, 454 (1986) (codified at 18 U.S.C. § 923(g)(1)(A)). "Three exceptions, however, nearly swallow this rule." Hardy, *supra,* at 654. FOPA specified that BATF needed neither a warrant nor reasonable cause for (1) a reasonable inquiry in the course of a criminal investigation; (2) an annual inspection for ensuring regulatory compliance; and (3) tracing a firearm in the course of a bona fide criminal investigation. Pub.L. No. 99–308, § 103(g)(1)(B), 100 Stat. 449, 454 (1986) (codified at 18 U.S.C. § 923(g)(1)(B)). In sum, FOPA revised the BATF's authority to inspect records in the possession of firearms dealers in order "to prevent the use of inspections to harass dealers or to drum up technical cases by 'fishing expeditions.'" Hardy, *supra,* at 617 (quoting 131 Cong.Rec. S9124 (daily ed. July 9, 1985) (statement of Sen. Hatch)).

In order to "enhance the ability of law enforcement to fight violent crime," H.R.Rep. No. 495, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1327, FOPA increased the classes of persons prohibited from possessing or receiving firearms under the GCA from four to seven. Section 102 of FOPA specified that persons are prohibited from receiving, possessing, or transporting firearms in interstate commerce if they are or have been: (1) convicted of a felony; (2) a fugitive from justice; (3) an unlawful user or addicted to a controlled substance; (4) adjudicated as a mental defective; (5) dishonorably discharged from the Armed Forces; (6) an illegal alien; or (7) renounced their United States Citizenship. Pub.L. No. 99–308, § 102, 100 Stat. 449, 452 (1986) (codified at 18 U.S.C. § 922(g)(1)—(7)).

Finally, FOPA authorized the BATF to "make available to any Federal, State, or local law enforcement agency any information which he may obtain by reason of this chapter with respect to the identification of persons prohibited from purchasing or receiving firearms ... and he may provide information ... when so requested by any Federal, State, or local law enforcement agency." Pub.L. No. 99–308, § 103(g)(1)(D), 100 Stat. 449, 455 (1986) (codified at 18 U.S.C. § 923(g)(1)(D)).

With this overview of the relevant statutory framework, we address Defendant's contention that he has standing under the Fourth Amendment to contest Probation–Parole Officers Drake and Gonzales' inspection of the ATF Form 4473 at J & R Pawn Shop. Defendant argues he has a reasonable expectation of privacy in ATF Form 4473 pursuant to the GCA as amended by FOPA because: (1) Congress amended the GCA to restrict state law enforcement and public access to firearms records in the

possession of firearms dealers, and (2) Congress intended that information contained in an ATF Form 4473 would remain confidential from state law enforcement unless first obtained through the BATF. We address Defendant's arguments in turn.

Defendant first contends that pursuant to the GCA as amended by FOPA, he has an objectively reasonable expectation of privacy in ATF Form 4473 because Congress "manifested an intent to protect the privacy interests of firearms owners in maintaining the confidentiality of their ownership and possession of a firearm." Aplt.Br. at 14. Specifically, Defendant argues that the original GCA allowed any law enforcement agency or the public-at-large to inspect ATF Form 4473s. Aplt.Br. at 16. In contrast, FOPA, according to Defendant, revised the GCA and *exclusively* authorized the BATF to inspect firearms records in the possession of federally licensed dealers. Thus, argues Defendant, by severely curtailing law enforcement and public access, Congress manifested an intent to create a reasonable expectation of privacy in firearms records in the possession of federally licensed firearms dealers in order to protect Second Amendment freedoms.

Defendant's argument rests upon a faulty premise. Contrary to Defendant's characterization, the original GCA did not grant state law enforcement agencies or the public warrantless inspection authority to examine ATF Form 4473s in the possession of federally licensed firearms dealers. Rather, § 923(g) of the GCA expressly authorized the Secretary of the Treasury, including by definition the BATF, to conduct warrantless inspections of records and firearms in the possession of federally licensed firearms dealers. *See* Pub.L. No. 90–618, § 923(g), 82 Stat. 1213 (1968) (codified as amended at 18 U.S.C. § 923(g)(1)(A)). Section 923(g) of the GCA did not grant unrestrained access to ATF Form 4473s to other law enforcement agencies or the public at large. *See id.* Consequently, Defendant's argument that Congress created a privacy interest in FOPA by greatly restricting public and state law enforcement access to firearms records is based on an erroneous characterization of the original GCA. As detailed *infra*, FOPA did not

grant persons prohibited from possessing firearms privacy interests in firearms records, but instead preserved the GCA's overriding intent to keep firearms from "those whose possession ... was contrary to the public interest." *Huddleston,* 415 U.S. at 824, 94 S.Ct. at 1268. Indeed, the Supreme Court observed that the GCA "contemplates interference with the ownership of weapons when those weapons fall into the hands of juveniles, criminals, drug addicts, and mental incompetents." *Id.* at 828 n. 9, 94 S.Ct. at 1270 n. 9. Thus, we reject Defendant's argument that FOPA established a reasonable expectation of privacy in ATF Form 4473s because the amendments severely restricted previously unrestrained access to the documents.

Defendant next argues that he has a reasonable expectation of privacy that the information contained in ATF Form 4473 would remain confidential from state law enforcement unless they first obtained it through the BATF. Because the GCA as amended by FOPA allows state law enforcement agents to request information contained in ATF Form 4473s from the BATF, 18 U.S.C. § 923(g)(1)(D), Defendant maintains that state law enforcement agents infringed his reasonable expectation of privacy because they did not acquire the information in his ATF Form 4473 from the BATF, but instead inspected the document at J & R Pawn Shop without prior BATF authorization.

We reject Defendant's argument because it disregards the significance of his status as a prohibited person under § 922(g)(1) of the GCA as amended by FOPA. In the preface to FOPA, Congress expressly stated that the GCA was not intended to limit the rights of law-abiding citizens. *See* Pub.L. No. 99–308, § 1(b)(2), 100 Stat. 449 (1986) ("[T]his title is not intended to discourage or eliminate the private ownership or use of firearms by *law-abiding citizens for lawful purposes.*") (emphasis added). Thus, the Supreme Court's observation regarding the GCA applies as well to FOPA: "[i]t should be apparent ... that Congress was not so much concerned with guaranteeing no interference with the ownership of weapons as it was in distinguishing between law-abiding citizens and

those whose possession of weapons would be contrary to the public interest." *Huddleston,* 415 U.S. at 828 n. 9, 94 S.Ct. at 1271 n. 9. Indeed, FOPA preserved the original GCA's overriding purpose to keep "'these lethal weapons out of the hands of criminals ... and other persons whose possession of them is too high a price in danger to us all to allow.'" *Id.* at 825, 94 S.Ct. at 1269 (quoting 114 Cong.Rec. 13219 (1968) (remarks of Sen. Tydings)).

This legislative distinction between law-abiding citizens and persons prohibited from possessing or receiving firearms under § 922(g) is central to the FOPA amendments and demonstrates that Congress did not grant Defendant a legitimate expectation of privacy in ATF Form 4473. Congress enacted FOPA to ensure that the BATF would focus enforcement efforts on criminals and others prohibited from possessing firearms under 18 U.S.C. § 922(g), and not on technical, record-keeping violations by firearms dealers. *See* H.R.Rep. No. 495, 99th Cong., 2d Sess. 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1329; *Cassidy,* 899 F.2d at 546–47 & n. 9; Hardy, *supra,* at 617, 654–55. In this regard, although Congress abrogated the BATF's authority to conduct warrantless inspections of firearms dealers it nevertheless allowed BATF agents to conduct warrantless searches in investigations of individuals like Defendant who are prohibited from possessing firearms under § 922(g). *See* Pub.L. No. 99–308, § 103(g)(1)(B), 100 Stat. 449, 454 (1986) (BATF needs neither a warrant nor reasonable cause for reasonable inquiry in criminal investigation, annual regulatory inspection, or tracing a firearm in the course of criminal investigation) (codified at 18 U.S.C. § 923(g)(1)(B)). Further, although Congress restricted the BATF's ability to release information obtained from ATF Form 4473s to state or local law enforcement agencies, FOPA authorized the BATF to release "any information ... with respect to the identification of persons *prohibited from purchasing or receiving firearms.*" Pub.L. No. 99–308, § 103(g)(1)(D), 100 Stat. 449, 455 (1986) (emphasis added) (codified at 18 U.S.C. § 923(g)(1)(D)). FOPA, therefore, allowed the BATF to release information regarding prohibited persons such as Defen-

dant without regard for privacy or confidentiality. Thus, Congress did not intend the GCA or FOPA to establish procedures to benefit persons like Defendant who are prohibited from owning firearms pursuant to § 922(g). We therefore reject Defendant's argument that FOPA's state access provision, § 923(g)(1)(D), creates a reasonable expectation of privacy in ATF Form 4473 that inures to the benefit of a person prohibited from possessing firearms under § 922(g). We conclude that under the GCA as amended by FOPA, Defendant has failed to establish an expectation of privacy in ATF Form 4473 that society would accept as objectively reasonable.

Additionally, the contents of ATF Form 4473 support our conclusion that Defendant has failed to establish a reasonable expectation of privacy in the document. ATF Form 4473 did not advise Defendant that the information elicited was private, or that it would remain confidential. Instead, Section A, part 8 of ATF Form 4473 informed Defendant that "[a]n untruthful answer may subject you to criminal prosecution." The back of ATF Form 4473 alerted Defendant that "the information is subject to inspection by ATF officers." Beneath that warning, ATF Form 4473 listed persons prohibited under federal law from possessing or receiving firearms, including persons "convicted or a crime punishable by imprisonment for a term exceeding one year." However, Defendant penned "No" in answer to the question "[h]ave you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year?" Finally, Defendant signed his name under the sentence "I also understand that the making of any false oral or written statement ... with respect to this transaction is a crime punishable as a felony." Thus, ATF Form 4473 warned Defendant that the information was not private, and could lead to criminal prosecution. Defendant's voluntary release of the information on ATF Form 4473 to J & R Pawn Shop therefore undermines his claim of an objectively reasonable expectation of privacy.

Finally, Defendant's inability to assert lawful possession, ownership, or control of J & R Pawn Shop or the ATF Form 4473 that

Probation–Parole Officers Drake and Gonzales inspected erodes his claim of a reasonable expectation of privacy. Because expectations of privacy derive in part from the right to exclude others from the property in question, lawful possession, ownership, or control are important considerations in determining whether a defendant has a legitimate expectation of privacy in the item seized or the area searched. *See. United States v. Salvucci*, 448 U.S. 83, 91–92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *Rakas*, 439 U.S. at 143–44 & n. 12, 99 S.Ct. at 430–31 & n. 12; *United States v. Lyons*, 992 F.2d 1029, 1031 (10th Cir.1993); *Abreu*, 935 F.2d at 1133.

In sum, we hold that Defendant has failed to establish that his " 'claim to privacy from governmental intrusion is reasonable in light of all the surrounding circumstances.' " *Leary*, 846 F.2d at 595 (quoting *Rakas*, 439 U.S. at 142, 99 S.Ct. at 430 (Powell, J., concurring)). Even assuming Defendant has demonstrated a subjectively reasonable expectation of privacy,[3] we do not believe that society would find it objectively reasonable that the GCA as amended by FOPA legislatively created a legitimate expectation of privacy in ATF Form 4473 for persons prohibited from owning firearms under 18 U.S.C. § 922(g). *See Rakas*, 439 U.S. at 143 & n. 12, 99 S.Ct. at 430 & n. 12 (expectation of privacy must be subjectively reasonable and one that society would recognize as objectively reasonable); *Betancur*, 24 F.3d at 76 (same). Because Defendant has failed to establish that Probation–Parole Officers Drake and Gonzales infringed his own objectively reasonable expectation of privacy, we affirm the district court's denial of his motion to suppress on the grounds that he lacked Fourth Amendment standing to object to the disclosure of the information contained in ATF Form 4473.

AFFIRMED.

---

**3.** We believe Defendant's subjective expectation of privacy in ATF Form 4473 amounts to nothing more than "a subjective expectation of not being discovered." *Rakas*, 439 U.S at 143 n. 12, 99 S.Ct. at 430 n. 12. As the Supreme Court noted, such an "expectation is not one that society is prepared to recognize as reasonable." *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)) (internal quotations omitted).